UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------

In re

    MARK LETTIERI                                        08-12443 B
    SUSAN LETTIERI,

                  Debtors                   <u>DECISION & ORDER</u>

---------------------------------------------------

                              Randy H. Gugino, Esq.
                              2140 Eggert Road
                              Amherst, NY 14226
                              Attorney for the Debtors

                              John H. Ring III, Esq.
                              385 Cleveland Drive
                              Cheektowaga, NY 14215
                              Chapter 7 Trustee

Hon. Carl L. Bucki

     The central issue of this dispute is whether the bankruptcy estate must reimburse the debtors for the amount that they advanced to satisfy a priority claim for non-dischargeable taxes.

     On June 3, 2008, Mark and Susan Lettieri filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. In schedules filed with that petition, Mr. and Mrs. Lettieri acknowledged their liability for sales and withholding taxes owed to New York State. All of these obligations are the kind of taxes described in 11 U.S.C. § 507(a)(8)(C) as "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." Accordingly, these trust fund taxes are priority claims under section 507(a)(8). Further, by reason of the exceptions to discharge in 11 U.S.C. § 523(a)(1)(A), these taxes would remain an obligation of the debtors even after entry of an order of discharge.

Due to the complexities of this case, no order of discharge was entered until May 24, 2010. Pursuant to 11 U.S.C. § 362(c)(2)(C), the discharge operated to lift the automatic stay with respect to efforts by the state to collect any non-dischargeable taxes from assets other than property of the bankruptcy estate. Consequently, the State of New York renewed its collection activity and obtained a promise from the debtors to make periodic payments on account of their surviving tax liabilities. Meanwhile, the Chapter 7 trustee continued his administration. Upon completing a liquidation of estate assets, the trustee filed an initial final report on November 1, 2012. Despite their receipt of notice of a hearing on the trustee's report, neither the debtor nor any creditor objected. After the court approved the outstanding applications for fees and allowances, the trustee promptly distributed all available cash to creditors. These distributions included two payments to the New York State Department of Taxation and Finance: a payment of $2,222.32 on account of a priority claim filed on March 12, 2009; and a payment of $21,503.96 on account of the priority portion of an amended claim filed on January 25, 2010.

Upon receiving distributions from the trustee, the Department of Taxation and Finance reviewed its outstanding claims. Based on that review, the Department withdrew its claim for $2,222.32 on January 7, 2013, and returned that payment to the trustee. Then by letter dated March 1, 2013, the Department advised that the outstanding balance due on the state's other claim was overpaid in the further amount of $17,069.50. Accordingly, this latter amount was also returned to the trustee. Now in receipt of funds in the amount of $19,291.82, the trustee has filed a supplemental report which proposes that these returned moneys be distributed pro rata among unsecured creditors. In

response, Mark and Susan Lettieri have filed a timely objection only with regard to the trustee's recommendation to redistribute the second overpayment of $17,069.50.

After receiving a discharge in bankruptcy, Mr. and Mrs. Lettieri negotiated a settlement of their non-dischargeable obligation to the State of New York.  They assert that pursuant to that arrangement, the State abated or otherwise waived liabilities in the amount of $6,247.05.  Then through periodic payments made prior to the trustee's final report, the Lettieris paid $10,822.45 to the Department of Taxation and Finance.  Together, the abatement and payments total $17,069.50, that is , the amount that the State returned to the trustee on March 1, 2013.  Asserting that the reimbursement resulted from their efforts and payment, Mark and Susan Lettieri have moved to disallow the supplemental report of distribution and to compel the trustee to remit to them the said sum of $17,069.50.  For the reasons stated hereafter, the debtor's request is denied.

The Bankruptcy Code precisely mandates the order and priority of distribution of estate assets.  Pursuant to 11 U.S.C. §726(a)(6), a debtor will receive the remainder of estate property only after payment of all creditors, including both priority creditors and those with unsecured claims.  In order to receive a distribution of anything other than that remainder, a debtor must somehow stand in the shoes of a valid creditor, either by assignment or by subrogation.  Mr. and Mrs. Lettieri make no claim that they have taken an assignment of any priority claim.  Rather, any right to payment from other than surplus can only accrue if the debtors are somehow subrogated to the rights of New York State.

The abatement of tax liability creates no entitlement to subrogation.  Section 521 of the Bankruptcy Code defines the duties of a debtor.  These include the obligation to

"cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under [Title 11]." 11 U.S.C. § 521(a)(3). In then setting the responsibilities of a trustee, 11 U.S.C. § 704(a)(5) provides that the trustee shall "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper." By negotiating an abatement of tax liabilities, Mark and Susan Lettieri fulfilled their statutory obligation to cooperate with the trustee in resolving claims. For this, they deserve no special reward. Rather, the abatement should inure to the benefit of the bankruptcy estate. Accordingly, we reject the claim for the amount of tax abatement and will limit the interest of Mr. and Mrs. Lettieri to rights, if any, that might derive from their payment of moneys to the State of New York.

As a general rule, codebtors may assert a claim for subrogation in bankruptcy. Section 509(a) of the Bankruptcy Code states that except as otherwise provided, "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." With regard to tax and certain other priority claims, the subrogated entity "is not subrogated to the right of the holder of such claim to priority." 11 U.S.C. § 507(d). Even as so limited, however, subrogation is a right that section 509(a) grants not to the debtors, but only to a paying co-obligor. As the debtors in this bankruptcy case, Mark and Susan Lettieri cannot rely upon any right to subrogation pursuant to section 509(a), but must establish some other basis for relief.

Although section 509 of the Bankruptcy Code may not expressly grant any right of subrogation to the debtors themselves, the statute does not necessarily preclude this outcome in equity. Equitable subrogation, however, is a right granted only to someone

who pays an obligation for which he or she is not primarily liable. 73 AM. JUR. 2D *Subrogation* § 19 (2012). The New York Court of Appeals summarized the applicable standard in its decision in *Gerseta Corp. v. Equitable Trust Co. of N.Y.*, 241 N.Y. 418, 425-26 (1926):

> Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability.

To the extent that a payor has only secondary responsibility for an obligation, the doctrine of subrogation will allow that entity to claim the rights that the recipient of payment had previously enjoyed. On the other hand, "a person's payment of his or her own debt, rather than of another's obligation, does not entitle the person to subrogation." 23 N.Y. JUR.2D *Contribution, Indemnity and Subrogation* § 168.

Notwithstanding the entry of an order of discharge, debtors in bankruptcy remain personally responsible for the payment of trust fund taxes, including withholding and sales taxes that a debtor retains or collects but fails to remit. Indeed, by denying dischargeability to certain tax liabilities, Congress implicitly recognized an opportunity for collection from debtors, without regard to any prospect for recovery from the bankruptcy estate. Because Mark and Susan Lettieri retained such primary liability to the State of New York, their post-petition payment of taxes will not establish any basis for subrogation. Nor have the debtors presented any other compelling justification for a recapture of estate assets. As a tribunal of equity, the Bankruptcy Court aims to avoid unjust enrichment. By making payment on account of non-dischargeable taxes, the debtors have essentially enabled the trustee to

distribute additional sums to unsecured creditors. Having valid and allowable claims, those creditors will receive no unjustified enrichment, but only such distribution as available resources and the law may allow.

Both in this district and elsewhere, the overwhelming weight of authority supports the principle that debtors will receive no reimbursement from the bankruptcy estate for any payment on account of non-dischargeable taxes. For example, in *In re Eble*, 14 B.R. 11 (Bankr. W.D.N.Y. 1981), the Internal Revenue Service had applied the debtor's income tax refund toward partial payment of a pre-petition priority tax obligation. Holding that subrogation is not available to a person who pays his own debt, Judge Edward D. Hayes rejected the debtor's request for reimbursement. When presented with this same issue, most other courts have reached an identical result. *See In re Daniel*, 2012 WL 4849965 (Bankr. M.D. Ala. 2012); *In re Sarnovsky*, 436 B.R. 461 (Bankr. N.D. Ohio 2010); *In re Frankum*, 399 B.R. 498 (Bankr. E.D. Ark. 2009); *In re Allen*, 359 B.R. 1, 4-5 (Bankr. D. Mass. 2006); *In re McCready*, 255 B.R. 834 (Bankr. M.D.Tenn. 1999); *Gardner v. Shiro*, 1997 WL 726445 (N.D. Tex. 1997); *In re Hagen*, 147 B.R. 166 (Bankr. N.D. Iowa 1992); *In re Tygrett*, 72 B.R. 129 (Bankr. C.D. Ill. 1987). Agreeing with these holdings, I reject the minority view that pre-petition taxes are "the responsibility of the estate during the pendency of the bankruptcy." *In re Kaldis*, 122 B.R. 54, 56 (Bankr. S.D. Tex. 1990). To the contrary, by reason of their non-dischargeable character, taxes remained a primary obligation of the debtors. Accordingly, Mr. and Mrs. Lettieri enjoy no right for reimbursement or subrogation for the amount of taxes paid.

Equity embraces a respect for precedent. When Mark and Susan Lettieri filed their petition for bankruptcy relief, case authority in this district had already established that the

bankruptcy estate had no obligation to reimburse debtors for their post-petition payment of non-dischargeable taxes.  *In re Eble*, 14 B.R. 11 (Bankr. W.D.N.Y. 1981).  Thus, the debtors could have anticipated the potential consequences of their continuing liability to the State of New York.  With reason to expect that outcome, Mr. and Mrs. Littieri have no basis in equity now to obtain payment prior to a full distribution to unsecured creditors.

For the reasons stated herein, the court will overrule the debtors' objection to the supplemental report of distribution.  Accordingly, the trustee may proceed to implement his proposed disbursement of estate assets.

So ordered.

Dated:   Buffalo, New York                             /s/     CARL L. BUCKI
            February 14, 2014                             Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.